IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:21-cv-00242-MR

VOYAGER INDEMNITY INSURANCE )
COMPANY, )
      Plaintiff, )
)  **MEMORANDUM OF**
vs. )  **DECISION AND ORDER**
)
DAKOTA GIFFORD and AMAZIAH )
DONDERO, )
)
      Defendants. )
_____ )

**THIS MATTER** is before the Court on the Plaintiff's Motion for Default Judgment [Doc. 13].

**I.  PROCEDURAL BACKGROUND**

The Plaintiff, Voyager Indemnity Insurance Company ("Plaintiff"), filed a Complaint for Declaratory Judgment against Defendants Dakota Gifford ("Gifford") and Amaziah Dondero ("Dondero") on September 10, 2021 [Doc. 1], and a First Amended Complaint for Declaratory Judgment against Gifford and Dondero on November 29, 2021 [Doc. 6]. The Plaintiff's First Amended Complaint seeks a declaration that the Plaintiff owes no duty to defend or indemnify Gifford under an insurance policy issued by the Plaintiff to DoorDash, Inc. ("DoorDash"), for the claims asserted against Gifford by

Dondero in an underlying tort lawsuit, Amaziah Dondero v. Dakota Gifford, 20-CVS-1464, which is pending in the North Carolina General Court of Justice in Henderson County. [Doc. 6 at 1-2]. The Amended Complaint asserts that the allegations in the underlying action fail to raise the possibility of liability under the policy the Plaintiff issued to DoorDash, and thus the Plaintiff may withdraw its defense of Gifford. [Id. at 1, 11].

On October 12, 2021, the Plaintiff filed a proof of service indicating that Dondero was served on September 13, 2021, and Gifford was served on October 2, 2021. [Doc. 4]. On December 17, 2021, the Plaintiff filed a proof of service indicating that the First Amended Complaint was served on Dondero on December 2, 2021, and on Gifford on December 6, 2021. [Doc. 7, Doc. 8]. Dondero and Gifford did not make an appearance or otherwise defend the action. On February 8, 2022, the Plaintiff filed a Motion for Entry of Default against Dondero and Gifford. [Doc. 10]. On February 11, 2022, the Clerk entered a default against Dondero and Gifford. [Doc. 11].

On April 21, 2022, this Court entered an Order directing the Plaintiff to file an appropriate motion or otherwise take further action with respect to Dondero and Gifford. [Doc. 12]. On April 22, 2022, the Plaintiff filed the present Motion for Default Judgment. [Doc. 13].

## II. STANDARD OF REVIEW

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Once a defendant has been defaulted, the plaintiff may then seek a default judgment. If the plaintiff's claim is for a sum certain or can be made certain by computation, the Clerk of Court may enter the default judgment. Fed. R. Civ. P. 55(b)(1). "In all other cases, the [plaintiff] must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact . . . ." Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). A defendant, however, "is not held . . . to admit conclusions of law." Id. (alteration in original) (quoting Nishimatsu, 515 F.2d at 1206). The Court therefore must determine whether the alleged facts state a claim for relief. GlobalSantaFe Corp. v. Globalsantafe.com, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003).

## III. FACTUAL BACKGROUND

The well-pleaded factual allegations of the Plaintiff's Amended Complaint are deemed admitted by virtue of the Defendants' default. Ryan,

3

Case 1:21-cv-00242-MR-WCM    Document 20    Filed 10/03/22    Page 3 of 18

253 F.3d at 780. The following is a summary of the relevant and admitted facts.

The Plaintiff is a corporation organized and existing under the laws of the State of Georgia with its principal place of business located in the State of Georgia. [Doc. 6 ¶ 2]. Gifford is a resident and citizen of Greenville, South Carolina. [Id. ¶ 3]. Dondero is a resident and citizen of Asheville, North Carolina. [Id. ¶ 4].

### A. The Voyager Policy

The Plaintiff issued Commercial Auto Insurance policy number FAR1300006 to DoorDash, for the policy period of September 1, 2019, to September 1, 2020 ("Policy"). [Id. ¶ 10]. The Policy contains various coverages related to commercial automobile exposures, including liability coverage. [Id.]. The Policy contains the following relevant language in its Liability insuring agreement:

> We will pay all sums an insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto within the term of coverage . . . .
>
> We have the right and duty to defend any insured against a suit asking for such damages or a covered pollution cost or expense. However, we have no duty to defend any insured against a suit seeking damages for bodily injury or property damage or a

4

> covered pollution cost or expense to which this insurance does not apply. We may investigate and settle any claim or suit as we consider appropriate.

[Id. ¶ 12]. The Policy also contains the condition that Voyager "cover[s] accidents and losses during the term of coverage and within the coverage territory. The coverage territory is the United States of America, its territories and possessions and Canada." [Id. ¶ 13].

The Policy includes an endorsement that extends limited coverage to contractors operating on behalf of DoorDash as delivery drivers. [Id. ¶ 13]. The Delivery Endorsement provides the following definition of delivery operators:

> Delivery operator means:
>
> 1. A person or entity who has entered into a contract with the named insured to operate a covered auto to provide delivery to customer(s) through the named insured's delivery application; or
>
> 2. A person who has been hired, retained, or contracted by an entity where such entity has a contract with the named insured to operate a covered auto or to provide delivery to customer(s) through the named insured's delivery application.

[Id. ¶ 15]. The Policy further provides that:

> For any delivery operator the term of coverage begins at the time the delivery operator accepts a delivery request made through a delivery application and begins operating a covered auto for delivery. The term of coverage ends when the delivery operator

5

has completed the delivery request(s) made through
the delivery application.

[Id.]. Thus, pursuant to the Policy, an independent contractor performing deliveries for DoorDash qualifies for coverage under the Policy only after he or she accepts an order and begins to use his or her automobile for delivery, and coverage terminates upon completion of the delivery. [Id. ¶ 16].

### B. The Underlying State Tort Action

Dondero commenced suit against Gifford on or about September 17, 2020, in a lawsuit captioned Amaziah Dondero v. Dakota Gifford, 20-CVS 1464, in the General Court of Justice, Superior Court Division, Henderson County, North Carolina (the "Underlying Action"). [Id. ¶ 17]. Dondero's complaint asserts a single cause of action for negligence against Gifford. [Id. ¶ 18]. In the Underlying Action, Dondero alleges that on August 4, 2020, he was a pedestrian legally in a crosswalk along Haywood Road in Asheville, North Carolina. [Id. ¶ 20]. Dondero alleges that at 7:00 p.m., as he crossed the crosswalk, Gifford negligently operated his vehicle while turning left from Haywood Road. [Id. ¶ 21]. As a result of Gifford's alleged negligence, Dondero claims Gifford crashed his vehicle into Dondero. [Id. ¶ 22]. Dondero alleges that this incident resulted in his sustained permanent injury, physical pain and mental suffering, scarring and disfigurement, and medical costs in excess of $25,000. [Id. ¶ 23].

In his original complaint, Dondero alleged that Gifford was operating his vehicle "in the course of making a food delivery for Door Dash at the time of the [accident]." [Id. ¶ 24]. Based on the allegations in the original complaint, the Plaintiff concluded it had a duty to defend Gifford against the suit pursuant to the complaint, the Policy, and North Carolina law. [Id. ¶ 25]. Accordingly, the Plaintiff agreed to defend Gifford against the suit subject to a complete reservation of its rights. [Id. ¶ 26]. However, at the time that the Plaintiff agreed to defend Gifford, the Plaintiff possessed information indicating that Gifford was not within the term of coverage at the time of the accident. [Id. ¶ 28]. Specifically, the Plaintiff's named insurer, DoorDash, provided the Plaintiff with a copy of Gifford's activity log on August 4, 2020, showing that Gifford had completed his last delivery before the time of the accident and had not accepted a new delivery. [Id. ¶¶ 29-31].

On November 2, 2020, Dondero filed an amended complaint in the Underlying Action. [Id. ¶ 42]. The amended complaint removed the original allegation that Gifford was making a DoorDash delivery at the time of the accident but was otherwise identical to the original complaint. [Id. ¶ 44]. The amended complaint included no reference to DoorDash, and DoorDash is not, and has never been, a party to the Underlying Action. [Id. ¶ 44-45].

7

Counsel for Dondero deposed Gifford in the Underlying Action on May 3, 2021. [Id. ¶ 35]. During that deposition, Gifford admitted he had completed an order shortly before the collision, had not accepted a new order, and thus was not in the course of making a delivery for DoorDash at the time of the accident. [Id. ¶¶ 38-39].

## IV. DISCUSSION

### A. Basis for Exercising Jurisdiction

The Plaintiff's Amended Complaint seeks a declaratory judgment to determine the rights, obligations, and liabilities of the parties under the Policy. [Id. ¶ 49]. The Federal Declaratory Judgment Act provides that a federal district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" Wilton v. Seven Falls Co., 515 U.S. 277, 284 (1995) (quoting Pub. Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241 (1952)). As such, the decision to entertain a declaratory judgment action is left to the sound discretion of the Court. Id. at 287.

The Fourth Circuit has explained that a "declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996) (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937)).

Here, a declaratory judgment will settle what, if any, legal obligation exists regarding the Plaintiff's continued defense of Gifford in the Underlying Action. Adjudication of the Plaintiff's obligations under the Policy will clarify whether there is any potential for Gifford to sustain liability on a claim covered by the Policy and afford relief from uncertainty to all parties. Accordingly, a declaratory judgment is appropriate.

However, "the Declaratory Judgment Act does not enlarge the jurisdiction of the federal courts; it is 'procedural only.'" Vaden v. Discover Bank, 556 U.S. 49, 70 n.9 (2009) (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227 (1937)). Therefore, the Court must possess "an independent basis for jurisdiction over the parties." Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 592 (4th Cir. 2004). Here, the Plaintiff is a citizen of the State of Georgia and Gifford and Dondero are citizens of South

Carolina and North Carolina, respectively. [Doc. 6 ¶¶ 3-4]. The amount in controversy in this case exceeds $75,000. [Id. ¶ 5]. As such, the Court has diversity jurisdiction over the Plaintiff's claims. See 28 U.S.C. § 1332.

The Court must also have personal jurisdiction over Gifford and Dondero to render a valid default judgment. The Court has personal jurisdiction over Dondero because he is domiciled in North Carolina. See, e.g., Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011). For the Court to have personal jurisdiction over Gifford, the Plaintiff must prove, by a preponderance of the evidence, that exercising jurisdiction will (1) comply with the forum state's long-arm statute and (2) comport with the due process requirements of the Fourteenth Amendment. See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003) (citation omitted). Because North Carolina's long-arm statute has been construed to extend as far as due process allows, Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001), this two-pronged test is collapsed into the single inquiry of whether the exercise of personal jurisdiction over the defendant comports with due process. Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 559 (4th Cir. 2014).

10

The Plaintiff's Amended Complaint contains jurisdictional facts sufficient to support the exercise of personal jurisdiction over Gifford by stating that the acts and omissions that gave rise to the Underlying Action occurred within North Carolina and that the Underlying Action is pending in North Carolina state court. [Doc. 6 ¶¶ 17-23]. Given those contacts with the forum, Gifford should have reasonably anticipated being haled into this court.

The Plaintiff has also complied with its obligations to effectuate service of process by serving Gifford and Dondero with a summons and a copy of the Complaint pursuant to Federal Rule of Civil Procedure 4. [Doc. 7, Doc. 8]. Finally, the venue is proper under 28 U.S.C. § 1391(b). Accordingly, this Court has jurisdiction over this matter and will proceed to address the merits of the Plaintiff's Motion for Default Judgment.

### B. Voyager's Duty to Defend

The Plaintiff's Amended Complaint seeks a declaration that it has no duty to defend Gifford in the Underlying Action. [Doc. 6 ¶ 49]. In a diversity case such as this, the Court applies the conflict of laws rules of the forum state. Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941). North Carolina law specifies that all contracts insuring interests within the state "shall be deemed to be made therein" and "are subject to the laws thereof."

N.C. Gen. Stat. § 58-3-1. Thus, North Carolina insurance law principles apply to the present matter.

North Carolina applies the "comparison test" to determine whether an insurer has a duty to defend. Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, LLC, 364 N.C. 1, 6, 692 S.E.2d 605, 610 (2010). Under this test, courts read the insurance policy and the complaint side-by-side to determine whether the facts, as alleged in the pleadings, are covered by the language of the policy. Id.

In the present case, the Plaintiff argues that the Court should apply the comparison test to the amended complaint in the Underlying Action, as opposed to the original complaint which alleged Gifford was driving for DoorDash at the time of the accident. [Doc. 13-1 at 7]. While it appears there is no North Carolina decision specifically holding that courts should apply the comparison test to the operative version of a pleading in an underlying action, North Carolina law provides that an amended complaint "has the effect of superseding the original complaint," Hyder v. Dergance, 76 N.C. App. 317, 319-20, 332 S.E.2d 713, 714 (1985), and North Carolina courts have referenced amended complaints when applying the comparison test, see, e.g., Eubanks v. State Farm Fire & Cas. Co., 126 N.C. App. 483, 488-89, 485 S.E.2d 870, 873 (1997); Buzz Off, 364 N.C. at 9, 692 S.E.2d at 612.

12

Accordingly, the Court concludes that the amended complaint controls for the purposes of determining whether the Plaintiff has a duty to defend.[1]

The relevant policy language here provides that, for DoorDash delivery operators, "the term of coverage begins at the time the delivery operator accepts a delivery request made through a delivery application and begins operating a covered auto for delivery. The term of coverage ends when the delivery operator has completed the delivery request(s) made through the delivery application." [Doc. 6 ¶ 15]. The operative version of the complaint does not mention DoorDash or otherwise allege that Gifford was engaged in a delivery at the time of the accident. [See Doc. 6 at Ex. 7]. Thus, the pleadings do not allege facts that are covered under the Plaintiff's policy.

However, "where the insurer knows or could reasonably ascertain facts that, if proven, would be covered by its policy, the duty to defend is not dismissed because the facts alleged in a third-party complaint appear to be outside coverage." Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co., 315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986). In other words, "[t]he duty to

---

[1] Numerous other courts have approached this issue similarly. See, e.g., Primrose Operating Co. v. Nat'l Am. Ins. Co., 382 F.3d 546, 552 (5th Cir. 2004) ("As 'an amended pleading completely supersedes prior pleadings, . . . the duty to defend rests on the most recent pleading.'" (quoting Guaranty Nat'l Ins. Co. v. Vic Mfg. Co., 143 F.3d 192, 194 (5th Cir. 1998)) (applying Texas law); State Farm Fire & Cas. Co. v. Higgins, 788 So.2d 992, 995 (Fla. Dist. Ct. App. 2001) ("When an amended complaint supersedes an earlier one, the allegations of the amended complaint control the duty to defend.").

defend is 'excused only if the facts alleged in the complaint do not even arguably fall within the policy coverage *and* an independent investigation reveals no extrinsic facts demonstrating coverage.'" Auto-Owners Ins. Co. v. Potter, 242 F. App'x 94, 100 (4th Cir. 2007) (emphasis added) (quoting St. Paul Fire & Marine Ins. Co. v. Vigilant Ins. Co., 724 F. Supp. 1173, 1177 (M.D.N.C. 1989)).

In the present case, in accordance with North Carolina law, the Plaintiff investigated whether extrinsic facts demonstrated coverage. Rather than demonstrating that the underlying facts fell within the Policy's coverage, this investigation revealed that the underlying facts were definitively *not* within the scope of coverage. Authenticated DoorDash records and Gifford's own deposition testimony established that, at the time of the accident, Gifford had completed a delivery and had not accepted another. [Doc. 6 ¶¶ 29-31, 38].

Although this investigation indicated that the facts of the Underlying Action were not covered by the Policy, the Plaintiff was not relieved of its duty to defend while the operative version of the complaint in the Underlying Action included the allegation that Gifford was engaged in a DoorDash delivery at the time of the accident. See Waste Mgmt., 315 N.C. at 692, 340 S.E.2d at 378 (holding that the insurer is bound to defend "groundless, false or fraudulent" lawsuits if the facts as alleged in the complaint are arguably

14

covered by the policy). However, now that the operative complaint does not allege facts arguably covered by the Policy and no facts demonstrating coverage have been revealed through the Plaintiff's investigation, the Plaintiff does not have a duty to defend Gifford.

### C. Voyager's Duty to Settle

The Plaintiff's Amended Complaint seeks a declaration that it has no duty to settle the claim in the Underlying Action. [Doc. 6 ¶ 49]. While no North Carolina court has directly addressed whether an insurer has a duty to settle where no duty to defend exists, numerous courts who have confronted this question have held that there is no duty to settle noncovered actions. See, e.g., Rocor Intern, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 77 S.W.3d 253, 261 (Tex. 2002) ("[A]n insurer generally has no obligation to settle a third-party claim against its insured unless the claim is covered under the policy."); Peerless Lighting Corp. v. Am. Motorist Ins. Co., 98 Cal. Rptr. 2d 753, 766 (Cal. Ct. App. 2000) ("[S]ince [the insurer] had no duty to defend the underlying action, it had no duty to settle it."); Trotter v. State Farm Mut. Ins. Co., 297 S.C. 465, 475, 377 S.E.2d 343, 349 (1988) ("[T]he rule [that a liability insurer owes its insured a duty to settle a personal injury claim covered by the policy if settlement is the reasonable thing to do] does not apply if [the claim] is not covered by the policy."); see also Restatement of

15

Liability Insurance § 25 cmt. a (Am. L. Inst. 2019) ("An insurer has no duty to settle noncovered legal actions.").

Further, to hold that the Plaintiff has a duty to settle a claim that falls outside of the scope of coverage of the Policy runs counter to the plain language of the Policy, which states that Voyager will pay "all sums . . . to which this insurance applies." [Doc. 6 at Ex. 1]. Thus, it has no obligation to pay damages in noncovered actions. Accordingly, based on the language of the policy and the conclusions of other courts who have confronted this issue, the Court concludes that the Plaintiff has no duty to settle the Underlying Claim.

**D. Voyager's Duty to Indemnify**

The Plaintiff's Amended Complaint seeks a declaration that it has no duty to indemnify Gifford in the Underlying Action. [Doc. 6 ¶ 49]. The duty to defend is broader in scope than the duty to indemnify; an "insurer's duty to defend is ordinarily measured by the facts as alleged in the pleadings; its duty to pay is measured by the facts ultimately determined at trial." Buzz Off, 364 N.C. at 7, 692 S.E.2d at 610 (internal quotations omitted) (quoting Waste Mgmt., 315 N.C. at 691, 340 S.E.2d at 377).

Here, because the operative complaint in the Underlying Action does not allege facts that fall within the Policy's coverage, there is no possibility

that the facts as ultimately determined at trial would be covered by the Policy. Thus, as the Plaintiff has no duty to defend Gifford in the Underlying Claim, it does not have a duty to indemnify him.

### E. Voyager's Request to Withdraw Its Defense of Gifford

The Plaintiff's Amended Complaint seeks a declaration that it is permitted to withdraw its defense of Gifford in the Underlying Action. [Doc. 6 ¶ 49]. However, this request by the Plaintiff falls outside of the Court's authority pursuant to the Declaratory Judgment Act. While the Plaintiff cites to an unpublished Fourth Circuit case that held that an insurer is "entitled to *rely*" upon a district court's declaratory judgment that it has no duty to defend in deciding to withdraw its defense, Auto-Owners Ins. Co., 242 F. App'x at 102 (emphasis added), the Plaintiff cites no authority supporting the argument that a declaration of permission to withdraw is within the Court's authority pursuant to the Declaratory Judgment Act.[2] Accordingly, the Court limits its declarations to the legal obligations of the Plaintiff—specifically, that the Plaintiff has no duty to defend or indemnify Gifford in the Underlying Action, and that the Plaintiff has no duty to settle the Underlying Action.

---

[2] To the extent the Plaintiff requests that counsel be allowed to withdraw from the matter, that is a determination left to the state court. See N.C. Gen. Stat. § 15A-144.

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Default Judgment [Doc. 13] is **GRANTED, and the Court hereby declares** that the Plaintiff does not have a duty to defend, settle, or indemnify with respect to the Underlying Action.

The Clerk of Court is respectfully instructed to enter a default judgment consistent with this Order against the Defendants Dakota Gifford and Amaziah Dondero.

**IT IS SO ORDERED.**

Signed: October 1, 2022

Martin Reidinger
Chief United States District Judge